**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**


SIMON SINNREICH,

      Appellant,

vs.                                     Case No.: 8:05-CIV-1164-T-17-MSS


FRANK MUSOLINO and
GEOFFREY TODD HODGES, AS TRUSTEE,

      Appellee.

_____/


**ORDER**


      This case is before the Court on the appeal of a bankruptcy order brought by Simon Sinnreich (Dkt. 14), response thereto (Dkt. 20) and appellee's reply brief (Dkt. 23).

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

**Procedural History:**

      Simon Sinnreich ("Sinnreich"), a Chapter 7 debtor, is appealing the Bankruptcy Court's decision that a debt owed by Sinnreich to the appellees, Frank Musolino ("Musolino") and Geoffrey Hodges, as Trustee of the Frank Musolino, Jr. Irrevocable Trust and Trustee of the Ashley Marie Musolino Irrevocable Trust ("Hodges"), was nondischargeable under 11 U.S.C. § 532 (a) (2) (a) (2000).  The following facts are taken from the underlying bankruptcy record.

**Appellees' Expertise, Experience, and Relationship with Sinnreich:**

Musolino knew Sinnreich prior to investing in Buzzeo.  He considered Sinnreich to be a trusted friend. Musolino had entered into several informal business transactions with Sinnreich prior to his investment in Buzzeo.  In late1999 or early 2000, Musolino loaned Sinnreich $500,000.00 "on a handshake." (I: 76-77.)  Both Musolino and Hodges had investment experience.  Musolino was an accredited investor who had previously invested in companies similar to Buzzeo.  Hodges was a tax attorney who specialized in business and securities transactions.

**Sinnreich's involvement with Buzzeo:**

Buzzeo, Inc., an Arizona company, was established to develop and market computer software.  Sinnreich was involved with raising funds for Buzzeo, and received a commission for the investments he obtained.  Sinnreich raised money by asking his friends, members of his community, and members of his country club to invest, and typically made a 6.5% commission on the investments he brought to the company. (IV: 32-36.)  Sinnreich joined the Buzzeo board of directors in October of 1998, and remained on the board until after Buzzeo's closure in April 2001.

**Musolino and Hodges' investments in Buzzeo**

In late 1998 or early 1999, Sinnreich asked Musolino to invest in Buzzeo, and gave him a document about Buzzeo.  Musolino declined to invest, and threw the document away. In August of 1999, Sinnreich again approached Musolino about investing in Buzzeo, and Musolino entered negitiations with Sinnreich.  Sinnreich represented that Buzzeo had complete software ready to market, that Buzzeo had a marketing partnership with Andersen Consulting, that Buzzeo had sales contracts with America West, United Technologies, and Pacific Gas and Electric, and that Buzzeo had never compensated Sinnreich for his sales.  Sinnreich did not disclose that Buzzeo did not have any marketable software, that Buzzeo had millions of dollars in liabilities from education contracts that it could not fulfill, that Buzzeo had no contracts for commercial software, that Buzzeo had pledged its assets as collateral to a $3 million dollar obligation, and that Buzzeo typically paid Sinnreich 6.5% commission on any investments he

obtained for Buzzeo.

Musolino invested $10 million in Buzzeo in September of 1999.  Hodges, acting as Musolino's attorney, helped to negotiate and draft the purchase agreement.  Hodges advised Musolino that due diligence should be used before the purchase, but Sinnreich and Mr. Buzzeo, Buzzeo's founder,  raised concerns that doing so would delay Buzzeo's initial public offering ("IPO").  As a result, Hodges drafted the stock purchase agreement to contain certain representations and warranties, including: (1) that Buzzeo's intellectual property was not pledged to anyone; (2) that Buzzeo had no debt outside the normal course of business; and (3) that all taxes had been filed, and all taxes due had been paid. Sinnreich and Mr. Buzzeo signed the agreement with the warranties.

In May 2000, Musolino invested another $1.12 million in Buzzeo.  At the same time, Hodges, acting as trustee for the Frank Musolino, Jr. Irrevocable Trust and the Ashley Marie Musolino Irrevocable Trust, purchased $5 million in Buzzeo shares. Sinnreich provided the same information and made the same omissions prior to the May 2000 investment as he did prior to the September 1999 investment.

In July 2000, Mr. DeSostoa, who became CEO of Buzzeo in June 2000, informed the Buzzeo Board of Directors that Mr. Buzzeo had misrepresented Buzzeo's financial status and product development status.  In September 2000, Appellees were informed that Buzzeo's contracts were in default.  Musolino negotiated a $9 Million secured loan to Buzzeo.  Buzzeo defaulted on the loan in February 2001, and subsequently closed.

## JURISDICTION

Sinnreich appeals the decision of the United States Bankruptcy Court, Middle District of Florida, Tampa Division.  This Court had jurisdiction over appeals from final judgments of the Bankruptcy Courts. 28 U.S.C. § 158 (a) (2000).

## STANDARD OF REVIEW

This Court functions as an appellate court when reviewing the Bankruptcy

Court's decision. Id. The Bankruptcy Court's findings of fact are reviewed under the clearly erroneous standard.  Club Assocs. V. Consolidated Capital Realty Investors (In re Club Assocs.), 952 F.2d 1223, 1228 (11th Cir. 1992). A finding of fact is clearly erroneous when "although there is evidence to support [the Bankruptcy Court's] finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).  When assessing a finding of fact under the clear error standard, "due regard shall be given the opportunity of the trial court to judge the credibility of the witnesses." Id. at 394 (citation omitted). The Bankruptcy Court's conclusions of law are reviewed *de novo*. In re Patterson, 967 F.2d 505 (11th Cir. 1992).

## ANALYSIS

To except a debt from discharge under 11 U.S.C. § 532 (a)(2)(A), a court must find that: (1) the debtor made the representations; (2) at the time he knew the representations to be false; (3) he made them with the intention and purpose of deceiving the creditor; (4) the creditor relied on the representations; and (5) the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.  Stamford Municipal Employees Credit Union, Inc. V. Edwards (In re Edwards), 67 B.R. 1008, 1009-1010 (Bankr. D. Conn. 1986); accord Hoffend v. Villa (In re Villa), 261 F.3d 1148, 1150 (11th Cir. 2001).  This Court must determine whether Sinnreich's debt was properly excepted under 11. U.S.C. § 532 (a)(2)(A).

Sinnreich is appealing from the Bankruptcy Court's decision to exclude his debt from discharge and raises the following issues: (1) the Bankruptcy Court's finding that Sinnreich had knowledge of the undisclosed material facts, and that he knew the materiality of the known facts at the time of the investments, was clearly erroneous; (2) the Bankruptcy Court applied an erroneous legal standard when assessing whether Musolino and Hodges justifiably relied on Sinnreich's representations because it "expressly ignored" Musolino and Hodges' particular expertise and experience; (3) the Bankruptcy Court's finding that Musolino and Hodges actually relied on Sinnreich's

representations was clearly erroneous; (4) the Bankruptcy Court's determination that Musolino and Hodges' reliance was justifiable was clearly erroneous.

**I: Did Sinnreich have knowledge and appreciation of the omitted material facts?**

**A. Did Sinnreich make false representations and omissions?**

The Bankruptcy Court found that Sinnreich made numerous representations and omissions to Musolino and Hodges prior to Musolino's initial investment in Buzzeo. Notably, the Bankruptcy Court found, as a matter of fact, that Sinnreich represented that Buzzeo had completed products ready for market; that Buzzeo had a marketing partnership with Anderson Consulting; that Buzzeo had sales contracts with America West, United Technologies, and Pacific Gas and Electric; that Buzzeo was sound financially; and that Buzzeo had never compensated Sinnreich for his work.  The Bankruptcy Court also found that Sinnreich knew but  failed to inform Musolino and Hodges that Buzzeo had no marketable software; that Buzzeo had no contracts for its commercial software; that Pacific Gas and Electric Co. indicated in a report that Buzzeo's software was incomplete and flawed; that prior investors had the option to sell their shares back to Buzzeo at a profit if an IPO did not occur before June 2000; that Buzzeo had pledged its assets, including its software, to Imperial Bank as collateral for a $3 million obligation maturing Oct. 1, 1999; and that Sinnreich would receive $650,000.00 in commission from Musolino's initial investment.  Sinnreich made the same representations and omissions prior to Musolino's and Hodges' May 2000 investments. Sinnreich does not challenge these findings of fact on appeal.

**B. Did Sinnreich know his representations were false?**

Sinnreich claims the Bankruptcy Court erred in its determination that the actual omissions were fraudulent, and asserts that there was insufficient evidence to support a

finding that he knew of the omitted facts.  Sinnreich also claims he lacked appreciation for the materiality of the facts he omitted.  The Bankruptcy Court's findings of fact are reviewed under the clear error standard. Club Assocs., 952 F.2d at 1228.

"Concealment of a material fact has long been recognized as a basis for fraud." John Deere Co. v. Broholm (In re Broholm), 310 B.R. 864, 877 (Bankr. D. Ill. 2004). However, a showing that a debtor willfully concealed or omitted facts is necessary in order for silence to establish false representation.  In re Zeller, 242 B.R. 84, 87 (Bankr. S.D. Fla. 1999).  This Court finds no reason to conclude that the Bankruptcy Court's finding that Sinnreich knowingly omitted material information is clearly erroneous.

There is ample evidence in the record to support the Court's finding that Sinnreich knew of the omitted facts.  Sinnreich admitted to knowing and failing to tell Musolino that he routinely received commissions for his sales of Buzzeo stock.  He admitted to knowing and failing to tell Musolino and Hodges that he received $650,000.00 from Musolino's first investment.  Sinnreich testified that he knew Buzzeo did not have a completed software product or any existing sales contracts at the time of Musolino's investment.  These admissions support the conclusion that Sinnreich made knowing omissions of facts to Musolino and Hodges.

Sinnreich argues he could not have known the technology was non-functional and non-marketable, because he lacks a technical background.  However, Sinnreich received a copy of a Pacific Gas and Electric Co. report indicating that Buzzeo's software was incomplete and flawed as of August 1999.  The Bankruptcy Court could have found, based on this report, that Sinnreich knew that Buzzeo's product was non-functional prior to Musolino's first transaction, despite the fact that Sinnreich lacked a technical background.

Sinnreich also claims that the record fails to substantiate that Sinnreich knew of Buzzeo's true financial condition.  However, the record shows Sinnreich was involved in arranging workouts of Buzzeo's liabilities and that he attended meetings where Buzzeo's board members discussed a spinoff of the educational software division.  The Bankruptcy

Court could have found, based on this and other evidence presented, that Sinnreich did in fact have knowledge of Buzzeo's financial status.

### C. Did Sinnreich appreciate the materiality of his omissions?

Sinnreich insists that, even if he did knowingly omit certain facts, his omission were not fraudulent because he did not appreciate the materiality of his omissions, and therefore lacked intent to deceive.  Sinnreich claims he believed Buzzeo's debt was part of normal business operating expenses.  Sinnreich also states that he believed the decision to divest the educational division from Buzzeo to be a strategic business decision, and claims he did not know the extent of Buzzeo's liabilities until the July 2000 board meeting.  He claims his positive interpretation of certain documents reflects he did not have an accurate understanding of the facts, and asserts that he truly believed Buzzeo's pilot project with United Technologies to be a success, even though it did not result in a contract.

While Sinnreich made numerous claims asserting his lack of bad faith, he did not offer any evidentiary proof of his intentions other than his own testimony.  The Bankruptcy Court heard five days of testimony, including the testimony of Sinnreich, before concluding that Sinnreich's testimony was inconsistent and incredible, "reflecting a tendency to provide false information when it suits his purpose."  (Adv. Dkt. 57 p. 24). The Bankruptcy Judge made a credibility determination as to the veracity of Sinnreich's testimony, and there is no basis for overturning the Bankruptcy Court's credibility determination.  "Due regard shall be given to the opportunity to the bankruptcy court to judge the credibility of witnesses."  In re T & B General Contracting, Inc., 833 F.2d 1455, 1458 (11th Cir. 1987) (quoting Fed. R. Bankr. P. 8103).  The Bankruptcy Court could have found, based on the testimony of the witnesses, the evidence that Sinnreich had access to  information he denied knowing, and its assessment of the credibility of the testimony of Sinnreich and other witnesses, that  Sinnreich knowingly and intentionally omitted material facts.  Therefore, this Court has determined that the Bankruptcy Court's finding that Sinnreich knowingly and intentionally made false representations and material omissions is not clearly erroneous.

**II: Did the Bankruptcy Court use the correct legal standard in assessing whether Musolino and Hodges' reliance was justifiable?**

Sinnreich asserts that the Bankruptcy "[C]ourt applied an erroneous legal standard in finding justifiable reliance by expressly ignoring that Musolino is a sophisticated, experienced investor, represented by independent counsel, and that Hodges, a tax, business and securities attorney, invested as a trust fiduciary."  Whether the court applied the correct legal standard to determine justifiable reliance is a legal issue, and is reviewable *de novo*.  In re Spadoni, 316 F.3d 56, 58 (1st Cir. 2003).

Sinnreich's argument that the Bankruptcy Court "expressly refused to consider" the particular education and sophistication of Musolino and Hodges is based on his assertion that the Bankruptcy Court made no findings of fact that were related to the individual knowledge and expertise of Musolino and Hodges.  Sinnreich interprets the absence of such findings of fact as a "refusal to weigh individual knowledge regarding the need for due diligence, making [the Bankruptcy Court's] determination reversible error."  (Appellant Br.17.)

This Court finds that the Bankruptcy Court applied the correct legal standard. The Bankruptcy Court acknowledged that § 523 (a) (2) (A) requires justifiable reliance by a creditor, and stated that "justifiable reliance accommodates '. . . the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases.'" (Adv. Dkt. 57 p. 26 (quoting Field v. Mans, 516 U.S. 59, 71 (1995)).  Though Sinnreich argues the Bankruptcy Court did not consider the expertise of Musolino and Hodges, Sinnreich's brief cites instances on the record where the Bankruptcy Court heard and considered testimony regarding Musolino's degree, his success as a businessman, and his experience.  (Appellant Br. 16.) The record establishes that the Bankruptcy Court heard and considered evidence of Hodges' expertise and experience, as well as his warnings to Musolino expressing the importance of due diligence.  (Appellant Br. 16.)  Sinnreich's claim that the Bankruptcy Court "expressly refused to consider" this evidence is without merit in light of the fact that the Bankruptcy Court made its findings of fact and law after

"having considered arguments by counsel, the entire record of this case, testimony of live witnesses, and all other relevant evidence . . . ."  (Adv. Dkt. 57 p. 2).  This Court finds that the Bankruptcy Court applied the correct legal standard in analyzing whether Musolino and Hodges justifiably relied on Sinnreich's testimony.

**III: Did Musolino and Hodges actually rely on Sinnreich's representations?**

Sinnreich challenges the Bankruptcy Court's finding that Musolino and Hodges actually relied on Sinnreich's representations.  For a debt to be excepted from discharge under 11 U.S.C. § 532 (a) (2) (A), a creditor must justifiably rely on the debtor's representations.  Field, 516 U.S. at 74-75 (1995).  Actual reliance is a necessary component of actual reliance.  Field, 516 U.S. at 70.  Therefore, for the Bankruptcy Court to have found that Musolino and Hodges justifiably relied on Sinnreich's representations, it necessarily found that they actually relied on Sinnreich's representations, even though the Bankruptcy Court made no express finding of actual reliance, and Sinnreich did not expressly argue the issue of actual reliance at trial.  Ordinarily, "an issue. . . raised for the first time in an appeal will not be considered . . . ." Depree v. Thomas, 946 F.2d 784, 793 (11th Cir. 1991).  However, because actual reliance is a necessary component of justifiable reliance, the issue of actual reliance was necessarily considered at trial, and may be reviewed.  Field, 516 at 70.  The Bankruptcy Court's findings of fact are reviewed under a clear error standard.  Club Assocs., 952 F.2d at 1228.

This Court finds that the Bankruptcy Court's finding of actual reliance was not clearly erroneous, because partial reliance is enough to support a finding of actual reliance, and because the Bankruptcy Court could have reasonably found that Musolino and Hodges actually relied on Sinnreich's representations.  Sinnreich argues that Musolino and Hodges did not rely on Sinnreich, but instead relied on the testimony of others and their own experience.  However, partial reliance on Sinnreich's statements would be sufficient to support the Bankruptcy Court's finding of actual reliance.  See

City Federal Savings Bank v. Seaborne, 106 B.R. 711 (Bankr. M.D. Fla. 1989). Therefore, even if Musolino and Hodges did rely on the representations of individuals other than Sinnreich, a finding of actual reliance on Sinnreich's statements would not be precluded, because Musolino and Hodges may have relied partially on Sinnreich's representations, and partially on the representations of others.

The Bankruptcy Court could have reasonably found that Musolino and Hodges actually relied on Sinnreich's statements. Musolino testified that he relied on Sinnreich's claim that he knew everything that was going on at Buzzeo. Both Musolino and Hodges testified that they relied on Sinnreich's assertions that he had not been compensated for the investments he brought to Buzzeo, and that they would not have invested had they known of the compensation he received. Sinnreich argues that Musolino and Hodges could not have relied on his claims that he would not be compensated, because a compensation statement was added to the stock purchase agreement. However, the presence of this provision would not necessarily preclude a finding that Musolino and Hodges relied on Sinnreich's statements that he had never been compensated in the past, and that the compensation he was to receive would be small. The Bankruptcy Court may have fairly believed Musolino and Hodges' testimony that they actually relied on Sinnreich's claims, and that they would not have invested had they known of his past compensation. This Court must give due regard to the Bankruptcy Court's credibility determinations. In re T & B General Contracting, Inc., 833 F.2d at 1458. Because a finding based on the credibility of a witness "can virtually never be clear error," and because the Bankruptcy Court may have fairly believed the testimony of Musolino and Hodges, the Bankruptcy Court's decision that Musolino and Hodges actually relied on Sinnreich's representations was not clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 575 (1985).

**IV: Was the Bankruptcy Court's finding of justifiable reliance clearly erroneous?**

This Court has determined that the Bankruptcy Court's finding that Musolino and Hodges justifiably relied on Sinnreich's representations was not clearly erroneous. To

establish justifiable reliance a court must consider "the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case. . . ." Field, 516 U.S. at 71 (quotation omitted).  An individual may justifiably rely on a factual representation even if an investigation would have revealed that the representation was false.  Id. at 70 (quotations omitted).  While an individual "cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had . . .  ma[d]e a cursory examination or investigation," this limitation "applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses."  Id. at 71 (quotations omitted).  An individual is required to make an investigation of a representation when "the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived . . . ."  Id.   This Court finds that the Bankruptcy Court's determination of justifiable reliance was not clearly erroneous because: (1) it was not clear error to find that the falsity of Sinnreich's statements were not obvious to Musolino and Hodges; (2) it was not clear error to find that Musolino and Hodges were not required to investigate the truth of Sinnreich's statements; and (3) it was not clear error to find Musolino and Hodges' reliance was justifiable given their experience and background

### A. Was the falsity of Sinnreich's representation obvious?

The Bankruptcy Court could have reasonably found that the falsity of Sinnreich's statements was not patently obvious to Musolino and Hodges.  Sinnreich claims that Musolino and Hodges relied blindly upon his representations, and that a cursory investigation would have revealed the falsity of his statements.  However, this limitation to justifiable reliance ". . . applies only when the recipient of the misrepresentation is capable of appreciating its falsity *at the time* by use of his senses."  Id. (emphasis added).  The Bankruptcy Court could have found that, at the time Sinnreich claimed that he had

11

never received compensation, Musolino and Hodges had no way to discover that he was lying.  Similarly, the Bankruptcy Court could have found that, at the time Sinnreich asked to change the Stock Purchase Agreement to allow for a reasonable compensation of "maybe $40,000.00," (I: 94), Musolino and Hodges had no way of knowing that Sinnreich would receive $650,000.00 in compensation.

Sinnreich claims that the Bankruptcy Court erred in finding that a cursory investigation would not have revealed the falsity of Sinnreich's statements, because Musolino and Hodges could have made examined Buzzeo's records, including Buzzeo's sales contracts and audited financial statements.  However, such actions would have been beyond the scope of cursory review, even if the records were available at the time of Sinnreich's representations.  If a buyer's reliance on a seller's statement that a piece of land is unencumbered "is justifiable, even if he could have 'walked across the street to the office of the register of deeds in the courthouse' and easily have learned of an unsatisfied mortgage," Musolino and Hodges could have justifiably relied on Sinnreich's statements, even though they could have traveled to Buzzeo's headquarters to examine Buzzeo's software, sales contracts, and financial documents.  Field, 516 U.S. at 70 (quoting Restatement (Second) of Torts, § 540 (1976)).  Because a detailed review of Buzzeo's records and contracts was not required under the cursory review standard, and because the falsity of Sinnreich's statements was not patent at the time the statements were made, this Court finds that the Bankruptcy Court could have reasonably found that the falsity of Sinnreich's statements was not obvious to Musolino and Hodges.

**B. Were Musolino and Hodges required to investigate?**

Sinnreich argues that certain 'danger signs,' including the lack of a private placement memorandum, the fact that Musolino and Hodges had not received financial information they had requested from Mr. Buzzeo, and the delay of Buzzeo's IPO, should have alerted Musolino and Hodges to the possibility that Sinnreich's statements were false.  Sinnreich claims that Musolino and Hodges were required to investigate his assertions because of these 'danger signs.'  However, the Bankruptcy Court could have found that these alleged "danger signs"were unrelated to the truth or falsity of

Sinnreich's statements. An individual is required to investigate a representation if "he has discovered something which should serve as a warning *that he is being deceived . . . .*" Id. at 71. The fact that Buzzeo's IPO was delayed, the fact that Musolino and Hodges had not received the  financial information they had requested from Mr. Buzzeo, the fact that the technology market had dried up, and the lack of a private placement memorandum may have indicated that there was some risk in investing in Buzzeo.  However, these facts would not necessarily have served as a warning that Sinnreich was deceiving them by misrepresenting the status of Buzzeo's sales contracts and concealing the fact that he routinely received 6.5% commission on investments he brought to Buzzeo.  The Bankruptcy Court could have justifiably found that Musolino and Hodges did not discover any facts which would have warned them of Sinnreich's deceit prior to their investments.  Therefore, the Bankruptcy Court's conclusion that Musolino and Hodges were not required to investigate Sinnreich's representations was not clearly erroneous.

**C (1): Was Musolino's reliance on Sinnreich's statements justifiable?**

This Court holds that the Bankruptcy Court's finding that Musolino justifiably relied on Sinnreich's statements was not clearly erroneous.  In light of the fact that Musolino routinely engaged in informal business deals with Sinnreich, and because Musolino and Sinnreich had a substantial relationship built on trust, as evidenced by Musolino's $500,00.00 loan to Sinnreich "on a handshake," the Bankruptcy Court could have reasonably found Musolino's reliance on Sinnreich justifiable despite his particular education and expertise.  Though it is clear from the record that Musolino was an experienced investor who ordinarily conducted due diligence investigations before investing, it is equally clear that Musolino regularly relied on Sinnreich's word in transactions, including business deals and loans.  The District Court could have found, after considering Musolino's particular qualities and characteristics, including his investment experience, his ordinary practice of conducting due diligence before investing, his friendship with Sinnreich that resulted in multiple informal business transactions**,** and his tendency to trust Sinnreich's word when dealing with large sums of money, that it was justifiable for Musolino to rely on Sinnreich's representations.

13

**C (2): Was Hodges' reliance on Sinnreich's statements  justifiable?**

This Court also holds that the Bankruptcy Court's finding that Hodges justifiably relied on Sinnreich's statements was not clearly erroneous.  Hodges, like Musolino, had particular expertise, and Hodges had a special position as the trustor for Musolino's children.  However, as trustor for an account established by Musolino for Musolino's children, Hodges may have been influenced by Musolino's decision to rely on Sinnreich's representations and invest large sums of money in Buzzeo.  The Bankruptcy Court may have reasonably found Hodges' decision to invest in a company that Musolino invested in, and that Musolino's trusted friend promoted, was enough to establish justifiable reliance on Sinnreich's statements, despite Hodges' particular expertise and usual practice of conducting due diligence investigations.  Hodges was investing money placed in an account by Musolino.  The fact that Musolino trusted Sinnreich's statements could have contributed to a finding that Hodges justifiably relied on Sinnreich when investing money for Musolino's children.  Therefore, this Court finds that the Bankruptcy Court's finding of justifiable reliance with respect to Hodges' investment was not clearly erroneous.

## CONCLUSION

The record establishes that the Bankruptcy Court could have justifiably found that Sinnreich knowingly made material omissions of fact to Musolino and Hodges prior to their investment in Buzzeo. The Bankruptcy Court used the correct legal standard in analyzing the claims of Musolino and Hodges, and there is sufficient evidence in the record to support its conclusion that Musolino and Hodges actually and justifiably relied on Sinnreich's statements when they invested in Buzzeo. Therefore, this Court holds that the Bankruptcy Courts findings of fact and law are not clearly erroneous, and the judgment of the Bankruptcy Court is affirmed.

**ORDERED** that the bankruptcy appeal be **denied**, and the Clerk of Court is

directed to close this case and enter judgment for the appellee.

**DONE and ORDERED** in Chambers in Tampa, Florida this 23rd day of June,

2006.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and Counsel of Record